## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CIVIL ACTION NO. 3:24-CR-298 |
| v. | (SAPORITO, J.) |
| JAVIER JUSTIN RODRIGUEZ, | |
| Defendant. | |

## MEMORANDUM

Now before the court is a motion by defendant Javier Justin Rodriguez to dismiss Count 1 of the Indictment against him. (Doc. 91). The Indictment charges the defendant with the offense of a possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1).[1] The defendant moves to dismiss this charge on two grounds: (1) the statute is unconstitutional under the Second Amendment as applied to this defendant; and (2) because the Second Amendment and case law require an individualized determination of a convicted felon's "dangerousness" to disarm him, the statute is facially unconstitutional

---

[1] The Indictment lists the following weapons: (1) a Smith Wesson .38 caliber firearm; (2) a Glock .40 caliber firearm; (3) a Glock. 45 caliber firearm; (4) a Smith and Wesson .45 caliber firearm; (5) an AK-47 firearm; and a Scorpion 9mm firearm. (Doc. 1).

under the Fifth Amendment's due process guarantee. The parties have briefed the motion (Doc. 92; Doc. 95; Doc. 108).

## I.    Legal Standard

Rule 12(b)(1) of the Federal Rules of Criminal Procedure provides that a "party may 'raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits.'" *United States v. Easley*, No. 24-CR-152, 2024 WL 4821471, at *2 (E.D. Pa. Nov. 18, 2024) (quoting Fed. R. Crim. P. 12(b)(1)). With respect to an as-applied challenge, such an attack "does not contend that a law is unconstitutional as written[,] but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010). Conversely, a "facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *Id.* A party "asserting a facial challenge 'must establish no set of circumstances exists under which the Act would be valid.'" *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). That is, such a party must show that "the statute is unconstitutional in all of its applications."

*Id.* Finally, a "criminal statute is impermissibly vague only if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *United States v. Addison*, No. 2:23-CR-118, 2024 WL 4278289, at *5 (W.D. Pa. Sept. 24, 2024) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).

## II.    Discussion

Our consideration of the defendant's motion requires a brief analysis of the Second Amendment, which provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

### A.    Supreme Court Precedent

Modern jurisprudence concerning the Second Amendment began in *District of Columbia v. Heller*, 554 U.S. 570 (2008), where the Supreme Court held that the Second Amendment guaranteed an individual the right to keep and bear arms unconnected with militia service. After scrutinizing the text and history of the Second Amendment, the Court found that "[t]here seems to us no doubt … that the Second Amendment

conferred an individual right to keep and bear arms." *Id.* at 595. In other words, the Court held that "the Second Amendment … codified a *pre-existing* right" "to possess and carry weapons in case of confrontation." *Id.* at 592. Nonetheless, the Court made sure to note that "the right secured by the Second Amendment is not unlimited." *Id.* at 626. Indeed, it explained that the protections granted by the Second Amendment and its restrictions were the "product of an interest balancing by the people." *Id.* at 635.

While *Heller* acknowledged the extent to which individuals were entitled to the protections under the Second Amendment, it was only in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), almost fourteen years after *Heller*, that the Supreme Court provided the "governing methodology for assessing whether modern firearm regulations comport with the Second Amendment." *Pitsilides v. Barr*, 128 F.4th 203, 208 (3d Cir. 2025). In *Bruen*, the Court explained that:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 (1961)). The Court, however, clarified that a historical restriction does not require a "historical twin" or "dead ringer," but rather it only necessitates a "representative historical analogue." *Pitsilides*, 128 F.4th at 209 (quoting *Bruen*, 597 U.S. at 29–30). Applying that standard, the Court held that the Second and Fourteenth Amendments protected an individual's right to carry a handgun not only for self-defense in the home, but also outside the home, and the government failed to identify an American tradition justifying the State's regulation on firearms at issue in the case. *Bruen*, 597 U.S. at 70 ("American governments simply have not broadly prohibited the public carry of commonly used firearms for personal defense.").

In *United States v. Rahimi*, 602 U.S. 680 (2024), the Supreme Court elaborated on the extent to which modern firearm restrictions need to match historical analogues for purposes of a *Bruen* analysis. The Court reiterated that "the reach of the Second Amendment is not limited only to those arms that were in existence at the founding" but rather "'extends, prima facie, to all instruments that constitute bearable arms, even those that were not [yet] in existence.'" *Rahimi*, 602 U.S. at 680 (quoting *Heller*,

554 U.S. at 582). The Court explained that "'the appropriate analysis' is not whether the challenged regulation sufficiently matches up to a historical one, but instead 'whether the challenged regulation is consistent with the principles that underpin our regulatory tradition.'" *Pitsilides*, 128 F.4th at 209 (quoting *Rahimi*, 602 U.S. at 692). The Supreme Court subsequently found the federal statue at issue to be lawful because "[s]ince the Founding, the Nation's firearm laws have included regulations to stop individuals who threaten physical harm to others from misusing firearms" *Rahimi*, 602 U.S. at 680, and that a statute prohibiting individuals subject to a domestic violence restraining order from possessing a firearm fell within that category of prohibitions. It concluded that individuals "found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 702.

In light of this background, modern Second Amendment jurisprudence dictates that when facing a challenge to Second Amendment regulations, a court must first decide whether the text of the Second Amendment applies to a person and his proposed conduct. *Bruen*, 597 U.S. at 31–33. If the Second Amendment applies, the government

bears the burden of proof that "its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. However, that regulation need not be a law "trapped in amber," but rather one "consistent with the principles that underpin our regulatory tradition." *Rahimi*, 602 U.S. at 691.

### B.   The Current Action

The defendant's motion primarily concerns the second prong of the *Bruen* analysis. The defendant argues that the government cannot meet its burden of showing a longstanding American tradition of depriving people like the defendant of firearms. (Doc. 92, at 11). Therefore, the defendant argues that we should find 18 U.S.C. § 922(g)(1) unconstitutional as applied to the defendant. (*Id.*). But we find that the government has met its burden of identifying a historical tradition of regulating firearms concerning individuals similarly situated to the defendant. As we noted above, the Supreme Court has recognized that "[s]ince the Founding, the Nation's firearm laws have included regulations to stop individuals who threaten physical harm from others misusing firearms," holding that "[w]hen an individual has been found by a court to pose a credible threat to the physical safety of another, that

individual may be temporarily disarmed consistent with the Second Amendment." *Rahimi*, 602 U.S. at 680. Here, the defendant's prior conviction for the unlawful possession of a loaded firearm in violation of N.Y. Penal Law § 265.03(3) makes the defendant a credible threat to the safety of others and thus the defendant may be temporarily disarmed consistent with the Second Amendment. Therefore, the defendant's as-applied challenge fails.

The Third Circuit has reiterated the Supreme Court's holding that "disarmament is justified as long as a felon continues to present a special danger of misusing firearms, [or] in other words, when he would likely pose a physical danger to others if armed." *Pitsilides*, 128 F.4th at 210 (internal citations and quotations omitted); *see also Range*, 124 F.4th at 230 ("*Rahimi* did bless disarming (at least temporarily) physically dangerous people."). But the Third Circuit has clarified that a felony conviction in itself may not be enough to constitute a "special danger of misusing firearms." *Pitsilides*, 128 F.4th at 211 ("[T]he determination that a felon does not currently present a special danger of misusing firearms may depend on more than just the nature of his prior felony. While some offenses may offer conclusive evidence that someone poses

such a danger, … courts must consider all factors that bear on a felon's capacity to possess a firearm without posing such a danger."); *see also Range*, 124 F.4th at 232 (holding that § 922(g)(1) as applied to the defendant was unconstitutional because the defendant's prior conviction of food-stamp fraud "contains no evidence that Range poses a physical danger to others."). Indeed, the Third Circuit has joined other circuits in adopting a "dangerousness" standard when evaluating the threshold for continued disarmament, *Pitsilides*, 128 F.4th at 210 (citing Fifth, Sixth, Seventh, and Eighth Circuit cases[2]), reliant upon on "a convict's entire criminal history and post-conviction conduct indicative of dangerousness." *Id.* at 211. Our analysis in this case "requires

---

[2] *Folajtar v. Att'y Gen. of the United States*, 980 F.3d 897, 924 (3d Cir. 2020) (Bibas, J., dissenting) ("As an original matter, the Second Amendment's touchstone is dangerousness"); *see also Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting) ("[L]egislatures have the power to prohibit dangerous people from possessing guns."); *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) (per curiam) ("The historical record demonstrates 'that legislatures have the power to prohibit dangerous people from possessing guns.'" (quoting *Kanter*, 919 F.3d at 451 (Barrett, J., dissenting))); *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024) ("[O]ur nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous."); *United States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024) ("Legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed.").

individualized factual findings" concerning the defendant's record.³ *Id.* at 213.

On July 5, 2012, the defendant was arrested by the New York City Police Department for the possession of a loaded firearm. (Doc. 113).⁴ The defendant was subsequently convicted for the felony of Criminal Possession of a Loaded Firearm under N.Y. Penal Law § 265.03 (*id.*), which states that:

> A person is guilty of criminal possession of a weapon in the second degree when:
>
> > (1) with intent to use the same unlawfully against another, such person:

---

³ The defendant argued in his brief in support of his motion that the court cannot make an assessment as to whether the defendant can be considered "dangerous" as to justify disarmament. *See* (Doc. 92) ("In a criminal prosecution, juries, not judges, must find the facts."). However, the defendant has since conceded that this question is ultimately a question of law, rather than fact for a jury. *See* (Doc. 97). Indeed, as this court has recently held, "the *court* is required to determine whether the Government's disarmament of an individual due to a prior conviction is consistent with the Nation's historical tradition of firearm regulation." *United States v. Coates*, No. 1:23-CR-0192, 2025 WL 2178416, at *8 (M.D. Pa. July 31, 2025) (emphasis added).

⁴ The government provided the Court a copy of the defendant's felony conviction on October 29, 2025. (Doc. 113). On November 7, 2025, the Court held a telephone conference with the parties to discuss the felony conviction. Both parties stipulated that the defendant was convicted for Criminal Possession of a Loaded Firearm under N.Y. Penal Law § 265.03(3).

(a) possesses a machine-gun; or

(b) possesses a loaded firearm; or

(c) possesses a disguised gun; or

(2) such person possesses five or more firearms; or

(3) such person possesses any loaded firearm. Such possession shall not, except as provided in subdivision one or seven of section 265.02 of this article, constitute a violation of this subdivision if such possession takes place in such person's home or place of business.

N.Y. Penal Law § 265.03. The government argues that the defendant's felony alone serves as an indication of dangerousness and an inclination to misuse firearms. (Doc. 108, at 7). We agree with the government based on the dangerousness of the defendant's prior felony conviction.

The defendant's felony is unlike those found by the Third Circuit to not be indicative of dangerousness or a misuse of firearms. *See Range*, 124 F.4th at 232 (concerning food-stamp fraud); *see Pitsilides*, 128 F.4th at 206 (concerning illegal gambling activity). Here, the defendant's felony conviction directly consists of a prior misuse of firearms. (Doc. 113) (invoking N.Y. Penal Law § 265.03); *see United States v. Dorsey*, 105 F.4th 526, 532 (3d Cir.) *cert. denied*, 145 S.Ct. 457 (2024) ("[T]he nature of [the defendant's] prior offense is meaningfully different from Range's.

[The Defendant] was convicted of violating a state firearm law, while Range was convicted of food stamp fraud. The former represents a failure to comply with a state law regulating the possession and use of deadly weapons; the latter is essentially a crime of dishonesty. It is far from clear that those offenses are similar for Second Amendment Purposes."). Moreover, the defendant was also charged with false personation in violation of N.Y. Penal Law § 190.23. (*Id.*). No disposition of that charge appears from the record. The police narrative stated that the "defendant provided an incorrect date of birth even after A/O advised that it would result in an additional charge." (*Id.*, at 5). The Supreme Court has reiterated that "[s]ince the Founding, the Nation's firearm laws have included regulations to stop individuals who threaten physical harm from others misusing firearms." *Rahimi*, 602 U.S. at 680. Thus, we find that a prior conviction for the unlawful possession of a loaded firearm serves as a sufficient basis to conclude that a defendant is inclined to misuse firearms.

Indeed, the Third Circuit has found that a "[f]ailure to comply with a state firearm law is at least arguably dangerous" and indicative of a danger of firearm misuse. *Dorsey*, 105 F.4th at 532. Many courts in this

Circuit have reaffirmed this notion. *See United States v. Fields*, No. CV 21-458, 2024 WL 756948, at *4 (W.D. Pa. Feb. 23, 2024) ("Defendant's relevant qualifying conviction, Carrying a Firearm Without a License, demonstrates that he is a threat to public safety and to the orderly functioning of society."); *United States v. Mabry*, 767 F. Supp. 3d 203, 209 (W.D. Pa. 2025) ("finding that "prior convictions for Firearm Not to be Carried Without a License are 'meaningfully different from' Bryan Range's crime of dishonesty, in that the [defendant's] conviction represents 'a failure to comply with a state law regulating the possession and use of deadly weapons,' which is 'at least arguably dangerous.'" (citing *Dorsey*, 105 F.4th at 532)). *United States v. Cotton*, No. CR 22-471, 2023 WL 6465836, at *4 (E.D. Pa. Oct. 4, 2023) ("[The defendant] was previously convicted of possessing a firearm by a person not to possess a gun. This demonstrates, at the very least, that he has a history of disobeying firearm regulations specifically designed to protect public safety."); *United States v. Johnson*, No. CR 23-77, 2023 WL 6321767, at *3 (E.D. Pa. Sept. 27, 2023) ("[The defendant's] prior convictions are for unlawfully carrying firearms and receiving stolen property. Those convictions indicated that he presents a potential danger to society and

cannot be trusted to obey firearm regulations.") (internal citations omitted). Moreover, as the Supreme Court has noted, "federal gun laws … focus … on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons." *Lewis v. United States*, 445 U.S. 55, 67 (1980). Therefore, the defendant's prior conviction of possession of a loaded firearm serves as a sufficient basis to highlight that the defendant presents a special danger of misusing firearms.[5]

### C. Defendant's Contention that § 922(g)(1) is Unconstitutionally "Vague"

The defendant argues that, because the Second Amendment and related case law require an individualized determination of a convicted felon's "dangerousness" to disarm him, Section 922(g)(1) is facially unconstitutional and void for vagueness under the Fifth Amendment's

---

[5] The defendant's conviction appears to have occurred over a decade ago. But courts have considered older felonies in their analysis of dangerousness in similar contexts. *See United States v. Small*, 747 F. Supp. 3d 817, 824 (E.D. Pa. 2024) (denying an as-applied challenged to Section 922(g)(1) based on 21-year old, 25-year old, and 21-year old felony convictions); *United States v. Feliciano*, No. CR 24-061-01, 2025 WL 1425477, at *4 (W.D. Pa. May 16, 2025) (denying an as-applied challenge to Section 922(g)(1) based on a 20+-year-old felony conviction); *United States v. Thompson*, No. CR 25-13-KSM-1, 2025 WL 1689390, at *1 (E.D. Pa. June 16, 2025) (denying an as-applied challenge to Section 922(g)(1) based on 20+year-old felony convictions).

due process guarantee. "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). But a defendant "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982); *see also Williams*, 553 U.S. at 304 (citing *Flipside*, 455 U.S. at 494–95 & nn. 6, 7); *Parker v. Levy*, 417 U.S. 733, 756 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."). Therefore, the defendant's contention is meritless.

## III.    Conclusion

For the foregoing reasons, the defendant's motion to dismiss is denied.

An appropriate order follows.


Dated: November 12, 2025            *s/Joseph F. Saporito, Jr.*
                                    JOSEPH F. SAPORITO, JR.
                                    United States District Judge